IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAMSPORT DIVISION

UNITED STATES OF AMERICA : CASE NO.
                          :
     v.                   :
                          :
JEREMY PAULEY            : 4:23-CR-163


TRANSCRIPT OF PROCEEDINGS

Change of Plea

    Held before the HONORABLE MATTHEW W. BRANN,
September 7, 2023, commencing at 12:16 p.m., Courtroom No. 1,
Federal Building, Williamsport, Pennsylvania.



APPEARANCES:

SEAN A. CAMONI, ESQUIRE
U.S. ATTORNEY'S OFFICE
William J. Nealon Federal Building
235 N. Washington Avenue, Suite 311
Scranton, PA 18503
570-207-4806
Sean.a.camoni@usdoj.gov
    For the United States


JONATHAN R. WHITE, ESQUIRE
DETHLEFS-PYKOSH LAW GROUP, LLC
2132 Market Street
Camp Hill, PA 17011
(717) 425-94 79
Jwhite@dplglaw.com
    For the Defendant


Proceedings recorded by machine shorthand; transcript produced
by computer-aided transcription.
_____
                Colleen V. Wentz, RMR, CRR
                  Official Court Reporter
            colleen_wentz@pamd.uscourts.gov

1   (Proceedings commenced at 12:16 p.m.)

2   THE COURT:  This is the matter of the United States

3   of America against Jeremy Pauley.  This matter is docketed

4   before this Court at Criminal No. 4:23-CR-00163.  The Court

5   notes the presence of Assistant United States Attorney Sean

6   Camoni; Counsel for the Defense, Jonathan White, Esquire, as

7   well as the Defendant, I assume, Jeremy Pauley.  Good

8   afternoon to you, sir.

9   THE DEFENDANT:  Good afternoon, Your Honor.

10  THE COURT:  Mr. Pauley, you're represented by

11  Mr. White today.  Are you satisfied with the legal

12  representation you have received from him to date?

13  THE DEFENDANT:  Yes, Your Honor.

14  THE COURT:  Thank you.  I hereby issue now an order

15  confirming that the United States has an obligation to timely

16  disclose Brady information to this Defendant.  I remind

17  Government Counsel that failure to comply with these

18  disclosure obligations may result in consequences such as the

19  exclusion of evidence, dismissal of charges, contempt

20  proceedings, disciplinary referral, and any other relief

21  authorized by law.  I will enter a written order confirming

22  these obligations.

23  Mr. Pauley, my Courtroom Deputy is about to

24  administer an oath to you.  If you give me any false answers,

25  you could be subject to further prosecution for perjury or for

1  making false statements to the Court.  Do you understand that,

2  sir?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Mrs. Rhinehart, would you administer

5  the oath now to this Defendant, please.

6              (The Defendant, Jeremy Pauley, was sworn.)

7              COURTROOM DEPUTY:  Please state your full name.

8          THE DEFENDANT:  Jeremy Lee Pauley.

9          COURTROOM DEPUTY:  Thank you.  When you sit down,

10 can you pull the microphone back over closer to you so we can

11 hear you.  Thank you.

12         THE COURT:  Is this matter before the Court for an

13 initial appearance, arraignment, and guilty plea, Mr. Camoni?

14         MR. CAMONI:  Yes, Your Honor.

15         THE COURT:  Mr. White, you agree?

16         MR. WHITE:  Yes, Your Honor.

17 BY THE COURT:

18 Q.  Mr. Pauley, before I can accept your plea of guilty with

19 respect to the charges that have been brought against you in

20 this case, it is necessary for me to establish under Federal

21 Rule of Criminal Procedure 11 that you fully and completely

22 understand your rights under the law, and that you understand

23 the consequences of a guilty plea.

24         Do you understand that, sir?

25 A.  Yes, Your Honor.

Q.   Mr. Pauley, you've been placed under oath.  I'm now going
to ask certain questions of you in what is called a plea
colloquy.  These questions are not meant to insult your
intelligence.  They are merely basic questions that I and all
Federal District Judges must ask in order to comply with the
Federal Rules.

          If you do not hear or you do not understand one of
my questions, please interrupt me.  I'm perfectly willing to
either repeat or rephrase my question.  And therefore, if you
respond to one of my questions, I am going to assume that you
have both heard and understood the question.

          Do you understand that, sir?

A.   Yes, Your Honor.

Q.   You may speak to your Attorney, Mr. White, at any time.
You may speak to Mr. White privately if you care to do so.  Do
you understand that?

A.   Yes, Your Honor.

Q.   Mr. Pauley, have you been furnished with a copy of the
charges made against you in this matter by the Government of
the United States?

A.   Yes, Your Honor.

Q.   Do you understand these charges?

A.   Yes, Your Honor.

Q.   Do you wish to have the Information read to you now in
open court?

A.    No, Your Honor.

Q.    Have you had enough time to review these charges with Mr. White?

A.    Yes, Your Honor.

Q.    Has Mr. White gone over the charges against you and fully explained your trial rights and defenses that you could bring to the charges?

A.    Yes, Your Honor.

Q.    Mr. Pauley, you have a Constitutional right to be charged by an Indictment of a grand jury, but you can waive or give up that right and consent to being charged by an Information of the United States Attorney.  Let me explain that to you now in some detail.

You have the right to have these charges submitted to a grand jury of between 16 and 23 people, and at least 12 of these people would have to find probable cause that you committed this offense in order for you to be charged in an Indictment.

Do you voluntarily now give up this right and agree to allow the Government of the United States to bring charges against you in an Information?

A.    Yes, Your Honor.

THE COURT:  For the record, the Court notes that the waiver of Indictment has been signed by Mr. Pauley and is accepted now by the Court.

Before I proceed further, I will note for the
record that I am addressing this Defendant, Mr. Pauley,
personally; I am doing so in open court and pursuant to
Federal Rule of Criminal Procedure 11(b)(1).

BY THE COURT:

Q.   Mr. Pauley, would you state your name again for the
record, please.

A.   Jeremy Lee Pauley.

Q.   Mr. Pauley, can you read, write, and converse in the
English language?

A.   Yes, Your Honor.

Q.   Could you tell me, sir, how old you are?

A.   41 years old.

Q.   And could you tell me, please, what your educational
background is?

A.   Ninth grade education.

Q.   Thank you.  Mr. Pauley, have you discussed the charges
made against you and any defenses you could bring to the
charges, and for that matter the case generally with
Mr. White?

A.   Yes, Your Honor.

Q.   I need to determine now if you're a citizen of the United
States.  If you're not, I have some additional questions for
you along those lines.  Could you tell me, sir, where you were
born?

1  A.    Allentown, Pennsylvania.

2  Q.    And you're citizen, then, of the United States?

3  A.    Yes, Your Honor.

4  Q.    Mr. Pauley, are you currently taking any prescription

5  medication?

6  A.    No, Your Honor.

7  Q.    Have you had any drugs or alcohol either today or

8  yesterday?

9  A.    No, Your Honor.

10  Q.    Have you been treated recently for drug addiction?

11  A.    No, Your Honor.

12  Q.    Have you been treated recently for alcohol addiction?

13  A.    No, Your Honor.

14  Q.    Have you been treated recently for mental illness?

15  A.    No.

16  Q.    Do you understand what is happening today and why you are

17  appearing before me in Federal Court?

18  A.    Yes, Your Honor.

19  Q.    Are you able to concentrate on what I am saying to you

20  today?

21  A.    Yes, Your Honor.

22        THE COURT:  Counsel, I'm satisfied, then, that this

23  Defendant is currently competent to plead guilty, and I will

24  therefore continue now with the change of plea hearing by

25  turning to Rule 11 of the Federal Rules of Criminal Procedure.

BY THE COURT:

Q.   Mr. Pauley, if you were to plead not guilty, you would have the right to a jury trial.  Let me explain that right to you now in some detail.

You are entitled to a jury trial in which you, through your attorney, Mr. White, would select a jury consisting of typically 12 but never fewer than 6 persons to sit as a jury to hear the facts of this case.  And at trial, the Government of the United States has the burden of proving each and every element of the crime charged against you, and the Government must meet this burden beyond a reasonable doubt.  You are presumed innocent during these proceedings unless and until the Government proves the charges against you beyond a reasonable doubt.

At trial, you have the right, again through your Attorney, Mr. White, to confront witnesses against you by what is called cross examination.  And at trial, you would also have the right to subpoena witnesses and evidence in support of your plea of not guilty.

At trial you would have the right to but would not be required to testify on your own behalf.  If you decide not to testify or set forth any evidence, that decision cannot be used against you.  To find you guilty, the verdict must be unanimous, which is to say all jurors would have to agree.

If you give up your right to a jury trial by

1  pleading guilty today, you are giving up your right to present

2  any defenses you may have and your right to appeal any

3  pretrial motions.

4        Having explained that to you, sir, do you

5  understand your right to a jury trial?

6  A.   Yes, Your Honor.

7  Q.   Do you understand as well that you have the right to

8  plead not guilty and to proceed with a jury trial in this

9  matter?

10  A.   Yes, Your Honor.

11  Q.   Do you understand that you have a right to be represented

12  by an attorney at all stages of this proceeding, including at

13  trial, should you choose not to plead guilty today?

14  A.   Yes, Your Honor.

15  Q.   Do you understand that by pleading guilty today, you will

16  waive or give up your right to a trial?

17  A.   Yes, Your Honor.

18  Q.   Do you wish to waive or give up that right and continue

19  with the guilty plea today?

20  A.   Yes.

21  Q.   Very well.  Mr. Pauley, I understand that you are

22  pleading guilty to one count of conspiracy to commit

23  interstate transportation of stolen property in violation of

24  Title 18 of the United States Code, at Section 371, which

25  means that in terms of the elements, that two or more persons

1  agreed to do something which federal law prohibits, namely

2  that which is set forth at Count 2, that you were a party to

3  or a member of that agreement, that you joined the agreement

4  or conspiracy knowing its objective to commit an offense

5  against the United States, and at some time during the

6  existence of the agreement, one or -- one or more members of

7  the conspiracy performed at least one overt act for the

8  purpose of furthering the objectives of the agreement.

9           Do you understand that?

10 A.    Yes.

11 Q.    You're also pleading guilty to one count of interstate

12 transportation of stolen property, in violation of Title 18 of

13 the United States Code, at Section 2314.  The elements of that

14 section are that you transported, transmitted, or transmitted

15 or transferred interstate or foreign commerce any goods,

16 wears, merchandise, securities, or money, in this case, human

17 remains; those human remains had a value of at least $5,000;

18 and you knew that those human remains had been stolen,

19 converted, or taken by fraud.  Do you understand that?

20 A.    Yes, Your Honor.

21 Q.    Mr. Pauley, do you understand that the statutory maximum

22 term of imprisonment under the United States Code for the

23 offense of conspiracy to commit Interstate transportation of

24 stolen property in violation of Title 18 of the United States

25 Code, at Section 371 is five years, a fine of $250,000, a

maximum term of supervised release of three years, together

with the costs of prosecution, the denial of certain federal

benefits, and a $100 special assessment.

        Do you understand that, sir?

A.   Yes, Your Honor.

Q.   Do you understand, as well, that the statutory maximum

term of imprisonment under the United States Code for the

offense of interstate transportation of stolen property in

violation of Title 18 of the United States Code, at Section

2314 is 10 years, a fine of $250,000, a maximum term of

supervised release of 3 years, together with the costs of

prosecution, the denial of certain federal benefits, and a

$100 special assessment.

        Do you understand that, sir?

A.   Yes, Your Honor.

Q.   Do you understand, as well, that the aggregate maximum

term of imprisonment, which is to say the maximum possible

sentence for both of these offenses is 15 years of

imprisonment, a fine of $500,000, 3 years of supervised

release, together with the costs of prosecution, the denial of

certain federal benefits, and a $200 special assessment.

        Do you understand that?

A.   Yes, Your Honor.

Q.   Do you understand, as well, that any term of supervised

release imposed is served after any term of imprisonment

1  imposed?

2  A.    Yes, Your Honor.

3  Q.    Do you understand that if you violate the terms of

4  supervised release, you may be required, then, to return to

5  prison?

6  A.    Yes, Your Honor.

7  Q.    Do you understand that this Court has the authority to

8  order restitution, if it is applicable, to be paid to any

9  victims of the crime?

10  A.    Yes, Your Honor.

11  Q.    Do you understand that this Court is obligated to impose

12  a $100 special assessment per offense in this case?

13  A.    Yes, Your Honor.

14  Q.    Do you understand that there are sentencing guidelines I

15  must consider before passing sentence on you?

16  A.    Yes, Your Honor.

17  Q.    Have you and Mr. White discussed the sentencing

18  guidelines that might apply in your case?

19  A.    Yes.

20          THE COURT:  Mr. White, based upon what you know

21  about Mr. Pauley's case today, which is to say in the absence

22  of a presentence report, what did you estimate his guideline

23  range to be?

24          MR. WHITE:  Your Honor, we estimated 24 to 30

25  months.

1    THE COURT:  What criminal history category do you

2  believe he falls into?

3    MR. WHITE:  I believe it could be a category 3.

4    THE COURT:  Thank you.  Mr. Camoni, do you agree

5  with that estimated guideline range, again, based upon what

6  you and your office know about Mr. Pauley's case today?

7    MR. CAMONI:  Your Honor, my estimate of the

8  guideline range would be the same.  It's a category -- a

9  criminal history category of 3, a total offense level of 18,

10 minus three levels for acceptance of responsibility for a

11 total range of 24 to 30 months, with the additional caveat

12 that as I've disclosed to Defense Counsel prior to the signing

13 of the plea agreement, the Government reserves its right to

14 file a Motion for an upward variance or departure under

15 Section 5K.2.8, which is the provision dealing with extreme

16 conduct.

17    THE COURT:  Thank you.

18 BY THE COURT:

19 Q.  Mr. Pauley, your guideline sentence cannot exceed the

20 statutory maximum sentence of 15 years of imprisonment.  Do

21 you understand that?

22 A.  Yes, sir.

23 Q.  A prior criminal conviction may increase your guideline

24 range.  Do you understand that?

25 A.  Yes, Your Honor.

Q.   Under Federal Rule of Criminal Procedure 32(c)(1)(a)(2),
a probation officer within this District, quote, Must conduct
a presentence investigation and submit a report to the Court
before it imposes sentence unless the Court finds that the
information in the record enables it to meaningfully exercise
the sentencing authority under Title 18 of the United States
Code, at Section 3553 and the Court explains its findings on
the record.

         Do you understand that?

A.   Yes.

Q.   Mr. Pauley, have you ever been on supervision for a crime
before such as probation, parole, supervised release, or ARD?

A.   Yes, Your Honor.

Q.   If you were on supervision when you committed this
present offense, your plea of guilty today would be an
admission that you violated that supervision.  Do you
understand that, sir?

A.   Yes, Your Honor.

Q.   Mr. Pauley, a United States Probation Officer from this
Federal District will prepare a presentence report which will
set your guideline sentencing range.  If you disagree with the
report, this guilty plea is still binding on you, but you can
contest the report with the probation officer, and after that
before me, if necessary.

         The Government can also contest the presentence

1  report.  Do you understand that?

2  A.    Yes, Your Honor.

3  Q.    Mr. Pauley, do you further understand that your attorney

4  and the Government can make -- can agree on facts and make

5  recommendations, motions, and requests at the time of

6  sentencing, but that I do not have to do what they ask me to

7  do?

8  A.    Yes, Your Honor.

9  Q.    Excuse me.  Your plea of guilty will be binding on you,

10 regardless of whether I agree with their facts and

11 recommendations at the time of sentencing.  Do you understand

12 that?

13 A.    Yes, Your Honor.

14 Q.    Mr. Pauley, do you understand that the guideline

15 sentencing range that was discussed earlier is advisory only,

16 that after your guideline range has been determined, I have

17 the authority to impose a sentence that is more severe or less

18 severe than the sentence prescribed by the guidelines.

19 A.    Yes, Your Honor.

20 Q.    Do you understand, as well, that is there's no parole in

21 the federal system, and you must serve the entire term of

22 imprisonment to which you are sentenced?

23 A.    Yes, Your Honor.

24 Q.    Do you further understand that no one can guarantee you

25 what sentence you will receive from me?

A.    Yes, Your Honor.

Q.    Mr. Pauley, in your plea agreement, you have waived your right to appeal your sentence.  However, sir, no Defendant can completely waive their right to appeal their sentence.  Did Mr. White explain that to you?

A.    Yes, Your Honor.

Q.    Do you understand, then, that you have waived your right to a direct appeal?

A.    Yes, Your Honor.

Q.    Do you understand that in certain circumstances, however, you may still be able to appeal your sentence to a higher Federal Court, the Court of Appeals, that could modify or set aside the sentence or order me to resentence you?

A.    Yes, Your Honor.

Q.    The Government may also be able to appeal your sentence.  Do you understand that?

A.    Yes, Your Honor.

Q.    You previously stated that you are a citizen of the United States, that you were born in, did you say Allentown, Pennsylvania?

A.    Yes.

Q.    Very well.  I understand that there is a plea agreement in this matter.  Mr. Pauley, did you voluntarily sign the plea agreement?

A.    Yes, Your Honor.

Q.   Do you believe that Mr. White has adequately explained the plea agreement to you?

A.   Yes, he has.

THE COURT:  Thank you.  Mr. Camoni, would you summarize the terms of the plea now for the Court's benefit?

MR. CAMONI:  Certainly, Your Honor.  In paragraph one of the plea agreement, the Defendant agrees, as we've discussed, to plead guilty to a felony Information waiving Indictment, charging, in Count 1, a violation of Title 18, United States Code, Sections 371 and 2314, conspiracy to commit interstate transportation of stolen property and in Count 2, a violation of Title 18, United States Code, Section 2314, interstate transportation of stolen property.

In paragraph 10, the parties agree and understand that the United States Sentencing Commission Guidelines will be used to calculate an advisory guideline range at the time of sentencing.  Paragraph 11, the Government agrees to recommend a three-level reduction in that offense level for acceptance of responsibility so long as the Defendant complies with the requirements under Section 3D.1.1 of the guidelines.

Under paragraph 12, the Government reserves the right to make an appropriate sentencing recommendation at the time of sentencing, up to and including the maximums under the statutes.  In paragraphs 15 and 16, the Defendant recognizes that the Court has an obligation under the mandatory

restitution act to impose restitution, if applicable in this

case, and that the Defendant agrees to make full restitution

in accordance with the schedule to be determined by the Court

in paragraph 16.

As Your Honor's already discussed in paragraphs 21

and 22, the Court is not bound by the terms of this agreement.

Mr. Pauley recognizes that the Court may reject any and all of

the parties' recommendations and is free to impose a sentence

up to and including the statutory maximums.  And under

paragraph 22, the Defendant recognizes that if the Court

imposes a sentence with which the Defendant is dissatisfied,

that alone will not be a ground upon which he will be

permitted to withdraw his plea of guilty.

Under paragraph 30, again, as the Court has already

noted, the Defendant is entered into a conditional appeal

waiver, to appeal his right to -- to waive his right to appeal

the conviction and sentence so long as the Court imposes a

sentence within or below the applicable advisory guideline

range as determined by the Court.

And in paragraph 31, the Defendant acknowledges

that he has certain rights to collaterally attack the

Defendant's conviction or sentence or any other matter

relating to the prosecution and waives that right to the

extent permissible by law.

These are the most salient provisions of the plea

agreement, Your Honor.

        THE COURT:  Thank you, sir.  Mr. White, has Mr. Camoni accurately summarized the principal terms of the signed plea agreement as you understand it?

        MR. WHITE:  Yes, Your Honor.

        THE COURT:  Thank you.

BY THE COURT:

Q.   Mr. Pauley, has Mr. Camoni, who is the federal prosecutor assigned to your case, accurately summarized the chief terms of the plea agreement as you understand it?

A.   Yes, Your Honor.

Q.   Mr. Pauley, do you understand that the terms of the plea agreement are simply recommendations to this Court, that I can reject these recommendations without permitting you to withdraw your plea of guilty and impose, then, a sentence that is more severe than the sentence you may anticipate?

A.   Yes, Your Honor.

Q.   Thank you.  Mr. Pauley, did anyone promise or offer you anything, aside from the written plea agreement, in order to get you to plead guilty before the Court today?

A.   No, Your Honor.

Q.   Mr. Pauley, have there been any threats made against you or made against any member of your family that caused you or forced you to plead guilty?

A.   No, Your Honor.

Q.   Mr. Pauley, are you pleading guilty, then, of your own free will?

A.   Yes, Your Honor.

Q.   Do you understand, sir, that you are entering a plea of guilty to a felony, which may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess a firearm, or the right to hold a professional license?

A.   Yes, Your Honor.

Q.   Do you understand as a consequence of your guilty plea, you may, then, be required to submit to DNA sampling?

A.   Yes, Your Honor.

Q.   Thank you.

          THE COURT:  Mr. Camoni, would you place on the record now the facts that you and your office would present to support the charges made against Mr. Pauley?

          MR. CAMONI:  Thank you, Your Honor.  Jeremy Pauley resided within the Middle District of Pennsylvania during all times relevant to the charges in the Information.  Mr. Pauley was in the business of buying and selling human remains. Mr. Pauley used FaceBook to advertise remains for sale and to communicate with other individuals with an interest in buying, selling, and collecting human remains.

          Mr. Pauley used PayPal to send and receive funds related to transactions wherein he sold or bought human

remains and the US Postal Service to ship and receive human remains.  Between at least 2021 and 2022, Jeremy Pauley retained human remains from Katrina Maclean and Joshua Taylor on multiple occasions.  Pauley maintained an ongoing business relationship with Maclean and with Taylor.  Maclean and Taylor provided Pauley with remains in exchange for payment or trade and were aware that Pauley was in the business of selling human remains.

Pauley knew that the remains provided to him by Maclean and Taylor were stolen from a morgue at Harvard Medical School in Boston, Massachusetts, by a source of supply who was employed there.  Maclean and Taylor shipped the remains obtained in Massachusetts through US mail to Pauley in Pennsylvania.

In fact, Maclean and Taylor purchased the remains they sold from Cedric Lodge, the manager of the morgue at Harvard Medical School.  Lodge stole parts from donated cadavers prior to cremation and sold them to Maclean, Taylor, and others between at least 2018 and 2022.

By agreement, Lodge would allow Maclean and Taylor into the morgue to choose what parts they wanted to purchase, including skin, whole and partial heads and faces, brains, internal organs, and bones.  The goal of the overall conspiracy was for all parties to profit from the sale of human remains.  The members of the agreement depended on one

another for supply and payment and developed a mutual trust in
their transactions.

Additionally, beginning in October, 2021, Jeremy
Pauley began purchasing human remains from Candace Chapman
Scott, an employee of a crematorium in Arkansas.  Pauley knew
that Chapman Scott was supposed to have cremated the remains
but instead stole them from her place of employment and sold
them to Pauley.  Pauley communicated with Chapman Scott
through FaceBook and sent payments via PayPal.  Chapman Scott
shipped the purchased remains through the United States mail
from Arkansas to Pennsylvania.  The remains Pauley purchased
from Chapman Scott included brains, internal organs, and two
stillborn fetal corpses.

Pauley sold many of the stolen remains he purchased
from Maclean, Taylor, and Chapman Scott.  Matthew Lampi, with
whom Pauley had an ongoing business relationship buying,
selling, and trading human remains between them purchased
several of the specimens that originated in Arkansas, knowing
that Pauley had obtained them from an individual who stole
them from a crematorium in Arkansas.  Pauley shipped the
remains, including one stillborn corpse, from Pennsylvania to
Lampi in Minnesota.  The aggregate value of the stolen remains
transported through interstate commerce was in excess of
$5,000.

At trial, the Government would prove these facts

through physical evidence, photographs, witness testimony,

expert witness testimony, documentary evidence, written

communications, payment records, and audio and video

recordings.

        THE COURT:  Thank you, sir.

BY THE COURT:

Q.   Mr. Pauley, do you fully admit to those facts as recited

now to the Court by the Assistant United States Attorney?

A.   Yes, Your Honor.

Q.   Mr. Pauley, with all the information I have addressed

with you thus far today, is it still your desire to plead

guilty?

A.   Yes, Your Honor.

Q.   Are you pleading guilty because you are, in fact, guilty?

A.   Yes, Your Honor.

Q.   Mr. Pauley, are you willing to waive your right to a

trial by a jury of your peers?

A.   Yes, Your Honor.

Q.   Mr. Pauley, do you now plead guilty?

A.   Yes, Your Honor.

Q.   Very well.  The Court makes the following findings:  This

Defendant, Jeremy Pauley, is fully alert; he is competent; he

is capable of entering an informed plea.  The Court notes that

this plea is a knowing and it is a voluntary plea supported by

an independent basis in fact containing each of the essential

elements of the offense -- offenses to which he has pled

guilty.  Mr. Pauley's plea of guilty is therefore accepted.

He is now adjudged guilty of these offenses.

For the record, I note the guilty plea form has

been signed by Mr. Pauley and is accepted now by the Court.

Thank you.

I will enter an order now memorializing these

findings.  The Court finds that this Defendant, Jeremy Pauley,

is acting voluntarily and not as a result of force or threats

or promises; that he understands his rights and the

consequences of his plea; and he voluntarily waives his right

to trial.  The Court finds that this plea is a basis in fact.

The Court accepts the plea of guilty to the Information.

It is ordered, then, that the United States

Probation Office shall conduct a presentence investigation,

shall prepare a presentence report.

Counsel, a presentence conference will be scheduled

if one proves necessary.

Counsel, do you all have -- do you each have a copy

of the pretrial services report?

MR. CAMONI:  I do, Your Honor.

MR. WHITE:  Yes, Your Honor.

THE COURT:  Mr. White, have you had an opportunity

to review the report with Mr. Pauley?

MR. WHITE:  Yes, Your Honor.

1          THE COURT:  Mr. Camoni, what's the Government's

2  position?

3          MR. CAMONI:  Your Honor, the Government is not

4  moving for detention at this time but would ask for release

5  under conditions of supervision.

6          THE COURT:  Mr. White?

7          MR. WHITE:  Your Honor, we have no issue with those

8  conditions.  My client did bring his passport with him and

9  does has the ability to surrender it to the Court today.

10          THE COURT:  Very good.

11          In accordance, then, with Title 18 of the United

12  States Code, at Section 3142, it is ordered that this

13  Defendant, Jeremy Pauley, is released upon his personal

14  recognizance, subject to the condition that he not commit any

15  federal, state, or local crime during his period of release

16  and subject to the condition that he cooperate in the

17  collection of a DNA sample if the collection of such a sample

18  is authorized pursuant to Section 3 of the DNA Analysis

19  Backlog Elimination Act of 2000.

20          I will enter an order on release on Mr. Pauley's

21  personal recognizance.  Mrs. Rhinehart, Mr. White will hand

22  that to you when I go off the bench.  Read that over, endorse

23  that, have Mr. Pauley endorse it; and then I will endorse it,

24  as well.

25          Is there anything else that should be discussed

regarding Mr. Pauley's case today?  Mr. Camoni?

          MR. CAMONI:  Nothing further from the Government,
Your Honor.

          THE COURT:  Mr. White, anything else?

          MR. WHITE:  Nothing, Your Honor.

          THE COURT:  Mr. Pauley, we'll see you back in
several months at the time of sentencing.  Court will stand in
recess, then, until 2:30 p.m..  Court will rise.

          (At 12:41 p.m., the proceedings were concluded.)

CERTIFICATION

I, Colleen V. Wentz, Federal Official Realtime Court Reporter, in and for the United States District Court for the Middle District of Pennsylvania, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter, and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United Sates.

_____
/s/ Colleen V. Wentz
Colleen V. Wentz, RMR, CRR
U.S. Official Court Reporter
570.259.2258

(The Foregoing of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)